UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: DIRECTECH SOUTHWEST, INC. | * | MDL DOCKET |
| FAIR LABOR STANDARDS ACT (FLSA) | * | NO.: 09-1984 ALL CASES |
| | * | |
| | * | SECTION: F |
| | * | |
| | * | JUDGE: MARTIN L. C. |
| | * | FELDMAN |
| | * | MAG. JUDGE: SALLY SHUSHAN |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO SANCTION DEFENDANT AND COMPEL DISCOVERY**

Respectfully Submitted

by

| | | |
|---|---|---|
| Dan Getman (pro hac vice) | Philip Bohrer (#14089) | Mark W. Frasher |
| GETMAN LAW OFFICE | BOHRER LAW FIRM, L.L.C. | LAMB LAW FIRM |
| Dan Getman (pro hac vice) | 8712 Jefferson Hwy., Suite B | 550 Fannin, Suite 1330 |
| Carol Richman (on the brief) | Baton Rouge, Louisiana 70809 | Beaumont, Texas 77701 |
| 9 Paradies Lane | Telephone: 225/925-5297 | |
| New Paltz, NY 12561 | | |
| Telephone: 845/255-9370 | | |

Plaintiffs, by and through undersigned counsel, move pursuant to Fed. R. Civ. P. 37(b) for an order to sanction defendant and/or to hold defendant in contempt for failing to produce documents this Court Ordered, to strike its defenses and award plaintiffs costs and fees on this motion, and to compel defendant to produce documents and responses to interrogatories.

**INTRODUCTION**

This case is a collective action under the Fair Labor Standards Act ("FLSA") for unpaid overtime on behalf of individuals who were employed by defendant as technicians. In its answer to the complaint, Defendant raised the defenses that plaintiffs' job duties exempted them from the FLSA under the SAFETEA-LU Technical Corrections Act and the Retail and Service Establishment exemption, 207(i). In September of 2007, plaintiff propounded discovery seeking information regarding Defendant's claims. Defendant was almost completely unresponsive to these demands.

In October 2008, knowing that it had withheld relevant documents on its defenses, Defendant prematurely moved for summary judgment raising the same affirmative defenses of the SAFETEA-LU TCA and Retail and Service Establishment exemptions. Plaintiffs immediately served additional and more detailed demands to address the premature motion. Defendant did not respond to these demands. This Court recognized the need for plaintiffs to review defendant's documents and conduct other discovery relevant to these defenses. To this end, at the conference on February 6, 2009, this Court verbally ordered a deadline for discovery production and subsequently issued a written Order on March 3, 2009 requiring defendant to produce discovery responses to the outstanding requests relevant to the defenses within 14 days . At present, defendant is in flagrant violation of this Court's Order.

This Court has granted plaintiffs until June 11, 2009, to conduct discovery to prepare a

response to defendant's summary judgment motion. *See* Order March 25, 2009. (Doc. No. 35). For plaintiffs to meaningfully respond to this motion, plaintiffs need proper discovery and the time to conduct sequential discovery if necessary. There are several thousand potential plaintiffs in this case, all of whom have been potentially denied substantial overtime wages. Plaintiffs' attorneys have made numerous attempts to obtain documents to litigate these plaintiffs' claims. Thus, plaintiffs now respectfully request that this Court sanction defendant, strike the defenses, and/or compel defendant to answer in sufficient time to enable plaintiffs to respond to the pending summary judgment. Defendant should be held in contempt for violating the Court's March 3, 2009 Order, and sanctioned for failing to comply with the discovery Order.

**A.    Procedural Facts**

On September 7, 2007, at the commencement of the discovery period, plaintiffs served discovery demands concerning defendant's boilerplate affirmative defenses. *See Plaintiffs' First Request for Production of Documents to Defendant,* annexed herein as "Exhibit A," and *Plaintiffs' First Set of Interrogatories to Defendant,* as "Exhibit B."

Defendant failed to raise timely objections yet provided only a fraction of the types of documents that Plaintiffs requested.[1] Defendant's responses were completely inadequate.[2] In

---

[1] On November 2 and December 3, 2007, defendant provided job manuals, a highly redacted Home Service Provider ("HSP") contract with DirecTV, and partial job records and partial payroll paysheets of certain named plaintiffs and samples of other miscellaneous documents, provided as bates stamps DTSW-MEL00001 - DTSW-MEL00590 and DTSW-MEL000591 - DTSW-002247. Redactions were made to all relevant parts of the HSP contract, even though a protective order existed between the parties.

[2] See Exh C, ¶¶ 7, 9,13, 15, 17, 24, 28, 30, 31, 32, 33, 42, 43. Additionally, in virtually every response, defendant objected that the request was "overbroad, unduly burdensome, vague," and/or "not reasonably calculated to lead to the discovery of admissible evidence" or "not all the broad categories of documents will lead to admissible evidence." See, Exh C, ¶¶ 1-28, 35, 37-46, 48, 51.

2

sixteen instances, defendant limited the scope of production by stating that it would provide only those documents which related to opt-in plaintiffs.[3] However, defendant has failed to provide even those documents.

In seventeen responses, Defendant stated that it is producing, and/or has produced documents responsive to each of these requests, leaving plaintiffs uncertain as to what, if anything had been fully produced and when, if ever, Defendant would further produce documents.[13]

In ten instances in its response to document production and interrogatories, Defendant stated that it would conduct a search upon receiving "appropriate search terms."[14] Even after plaintiff supplied search terms, defendant failed to conduct a search for responsive electronically stored information. A copy of plaintiffs' search terms are annexed hereto as Exhibit I. Despite plaintiffs supplying a search protocol, defendant to be conducting its own search regardless of plaintiffs' proposal. *See* Exhibit J.

In violation of Fed. R. Civ. P. 34(b)(2)(E), no documents were provided in their original ESI format and thus, information could not be collated, compiled, and manipulated to achieve a meaningful interpretation for matters which include damage calculations. *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* 2008 WL 3271924 (D. Kan. Aug. 7, 2008). Additionally, defendant responded to only some interrogatories[15]. *See Defendant's Responses to Plaintiffs' First Request for Production of Documents* annexed herein as "Exhibit C " and

---

[3] Exh. C, ¶¶ 1, 2, 9, 10, 11, 13- 22, 25 and 26. In many of its responses defendant did not state that it would produce any documents at all.

[13] Exh C, ¶¶ 1,2, 3,6, 8, 11, 12, 14, 21-23, 25-27, 29, 34, 37, 40, 41, 47.

[14] Exh. C, ¶¶ 6, 10, 16,17, 20, 38, and 39; Exh. D, ¶¶ 16, 18, 19.

[15] Defendant provided no substantive response to fourteen interrogatories. *See* Exh. D,¶¶ 1, 2, 4, 5-7, 9, 11, 13, 15-19.

3

*Defendant's Responses to Plaintiffs' First Set of Interrogatories*, as "Exhibit D."

Defendant also made numerous redactions to documents, even though a protective order has been entered in this case. *See* Exhibit L.

On January 10, 2008, Plaintiffs moved to compel. *Melson Docket No. 43.* As part of a settlement on the motion to compel, plaintiffs agreed to withdraw the motion, and the parties agreed that the case would be removed from Judge Porteous and tried by Magistrate Shushan. *Melson Docket No. 50.* Shortly thereafter, the case was transferred to Judge Feldman on April 1, 2008. *Melson Docket No. 65*.

On October 16, 2008, despite never having provided adequate discovery regarding its affirmative defenses, defendant moved for summary judgment based on these same defenses. Defendant simultaneously made a motion for a stay on all proceedings pending a decision of its summary judgment motion. Plaintiffs immediately served a variety of discovery demands responsive to the motion. *See Plaintiffs' Second Request for Production of Documents to Defendant* annexed herein as "Exhibit E," and *Plaintiffs' Second Interrogatories to Defendant*, as "Exhibit F." Defendant failed to respond to any of these demands.

At a conference on February 7, 2009, this Court directed defendant to respond to all discovery requests which had already been served, insofar that the requests pertained to summary judgment topics. Defendant did not respond. On March 3, 2009, this Court issued a written Order stating, in part, that "Defendant is to respond to discovery already served related to the summary judgment topics no later than 14 days from the date this stipulation is Ordered" and that "all discovery previously served shall be deemed to apply to all MDL cases herein."

On March 17, 2009, the deadline for discovery production, Defendant served responses, but no documents. *See Defendant's Responses to Plaintiffs' Second Request for Production of Documents* annexed herein as "Exhibit G, " and *Defendant's Responses to Plaintiffs' Second*

4

*Interrogatories to Defendant*, as "Exhibit H. " Defendant objected to many unobjectionable items, promised to provide responsive documents at some unspecified point in the future, and failed to provide a single document[16] These responses violate this Court's March 3rd Order.

Defendant provided no documents within 14 days granted in the Order. Sixteen days after the Order deadline had passed, defendant provided a mere 113 pages (mostly web offers to DirecTV customers) and 2 small spreadsheets[17] of shockingly incomplete discovery. Some of the documents provided were completely redacted.[18] None of the documents are categorized to the discovery item they relate to, as required by the Rule 34(b)(2)(E)(i). Whole categories of documents are simply missing in entirety (payroll, hours of work as shown by computer timestamps, any wage and hour data for opt-in plaintiffs, classmember wage and hour data, the contract terms with DirecTV, payrates for the plaintiffs' job rate pay, when defendant became aware of SAFETEA-LU, the names of witnesses concerning that knowledge, to name but a few). Defendant's responses are wholly inadequate and manifest a wholesale failure to comply with this Court's order.

Even though not required on a motion for sanctions, Plaintiffs attempted to schedule a conference with defense counsel to discuss defendant's discovery failures. *See* Exhibit K. Defense

---

[16] Defendant did produce the list of class members for purposes of notice, separately ordered by this Court.

[17] Both spreadsheets appear only to relate to the four named plaintiffs, and omitting all opt-in plaintiffs or other putative class members. One spreadsheet appears to contain nothing relevant. The other does list some activities (but omits most of the computer timestamps for most of the activities).

[18] The revenue data applicable to the 207i defense was completely redacted. No information was supplied on the register other than the row labels. *See Ex. L*

counsel has refused to supply a time for such a conference. *See* Exhibit J.

Plaintiffs now move to this Court to sanction Defendant and/or hold Defendant in contempt for violating the March 3, 2009 Order directing Defendant to comply with discovery, and/or to compel defendant to produce outstanding discovery.

**B.    Defendant has violated this Court's Order by failing to produce documents relevant to Defendant's Summary Judgment motion.**

On March 3, 2009 this Court Ordered that "Defendant is to respond to discovery already served related to the summary judgment topics no later than 14 days from the date this stipulation is Ordered" and that "all discovery previously served shall be deemed to apply to all MDL cases herein."

As far back as 2007, plaintiffs have sought discovery pertaining to the Retail and Service Establishment ("207(i)") and SAFETEA-LU TCA exemptions. Defendant, despite moving for summary judgment, simply never responded. Thereafter, plaintiff again formally requested such documents. To this date, defendant has not complied with this Court's Order and has objected to demands which unequivocally and explicitly relate to defendant's affirmative defenses.

Fed. R. Civ. P. 37(a)(4) states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." In this case, defendant has provided evasive, improper reasons as to why it would not disclose documents.[19] Defendant has completely failed to disclose certain requested documents, while it has made an incomplete disclosure of others. Defendant has stated that it would produce further documents, but has not done so. Additionally, in violation of Fed. R. Civ. P. 34(b)(2)(E), defendant has not labeled

---

[19] Most of Defendant's responses failed to state the grounds for its objections to plaintiffs' discovery with sufficient specificity in violation of Fed. R. Civ. P. 33(b)(4).

6

documents that it has produced, so plaintiff cannot know to which discovery request it is responding.[20] Finally, defendant has not complied with rules governing electronically store information ("ESI") and has provided plaintiffs only with PDFs that cannot be manipulated and which are out of compliance with Fed. R. Civ. P. 34(b)(2)(E)(ii).[21] *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* 2008 WL 3271924 (D. Kan. Aug. 7, 2008)(non-manipulable data production is not compliant). The original documentation that plaintiff seeks is in electronic format that plaintiff could search, compile, manipulate and electronically interpret.

Defendant should be held in contempt for failing to obey this Court's Order of March 3, 2009, which explicitly required that defendant respond to discovery demands by March 17, 2009. Plaintiffs move for this Court to impose sanctions on Defendant for failing to comply with this Court's discovery Order. Fed. R. Civ. P. 37 (b)(2)(A) allows sanctions in the District where the action is pending when a party fails to obey a discovery order. The court may issue further just orders that may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; *(ii) prohibiting the disobedient party*

---

[20] In violation of Fed. R. Civ. P. 34(b)(2)(E), defendant failed to identify not only which documents produced responded to each discovery request, but whether documents were provided at all. By stating that it has produced, is producing, or will produce documents, it is impossible to tell which documents defendant deems to have already produced, whether plaintiff should be expecting more documents in the future, or whether defendant has actually withheld documents on the basis of its objection. Accordingly, defendant should be compelled to specify which documents are responsive to each request and state whether all documents have been produced.

[21] Fed. R. Civ. P. 34(b)(2)(E)(ii) states that [u]nless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information: If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

> *from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence*; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party (emphasis added).

As such, defendant's affirmative defenses should be stricken. Additionally, plaintiffs move for an order compelling an answer, designation, production, and inspection pursuant to Fed. R. Civ. P. 37(a)(3)(B).

### C. Broad Discovery is Required on Defendant's Summary Judgment Motion.

By raising the Retail and Service Establishment and the SAFETEA-LU TCA exemptions plaintiffs are entitled to broad discovery on these defenses. The Fed. R. Civ. P. are replete with provisions that prevent a party from raising affirmative defenses without making every element of its claim transparent.

#### 1. Defendant has not produced requested documents relevant to the Retail and Service Establishment exemption, 207(i).

The 207(i) exemption is highly nuanced and fact specific. More than 100 pages of Department of Labor regulations make fine distinctions to differentiate when the exemption is or is not applicable. 29 C.F.R. Part 779. To adequately respond to defendant's motion, countless factors must be carefully examined through discovery. Section 207(i) states:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

A retail or service establishment "(a) must engage in the making of sales of goods or services; and (b) 75 percent of its sales of goods or services, or of both, must be recognized as retail in the particular industry; and (c) not over 25 percent of its sales of goods or services, or of both, may be sales for resale." 29 U.S.C. § 207(i); 29 C.F.R. §§ 779.313, 779.411.[22] These elements are "explicit prerequisites . . . not merely suggested guidelines." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Discovery will show the inapplicability of 207(i) in this case. Yet, plaintiffs have not yet received discovery regarding these elements to make this showing. First, defendant has failed to supply information regarding whether plaintiffs are employed by a "retail or service establishment." *See* 29 C.F.R. §779.411. The Code of Federal Regulations dedicates an entire subpart, 29 C.F.R. § 779 (D), to defining the term "retail or service establishment" and describes numerous considerations. "Establishment" is a term of art under the statute and is different from the formal "employer(s)" under the FLSA.[23]

---

[22] The DOL regulations defining the scope of the 207(i) exemption incorporate the definition of a retail or service establishment from 29 U.S.C. §213(a)(2) and explicitly direct readers to the §213(a)(2) regulations interpreting the term. 29 C.F.R. § 779.411. Although §213(a)(2) was repealed in 1989, the DOL did not repeal the regulations interpreting the term retail or service establishment based on its position that Congress intended the term to have the same meaning under 7(i). *See* 29 C.F.R. § 779.24; *see, e.g., Reich v. Delcorp*, *Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993) (holding that, despite 13(a)(2)'s repeal, the regulations and caselaw interpreting the term retail or service establishment continue to apply to 207(i)).

[23] To determine whether a worker is "employed by" an establishment, not just by the business that owns it, courts look to the source of the worker's direction and control. *See Mitchell v. The Kroger Company,* 248 F.2d 935, 941 (8th Cir. 1957); *see also Martin v. Bedell*, 955 F.2d 1029, 1034 (5th Cir. 1992) (noting that "[t]he mere location of employment is . . . not conclusive" and that "court[s] should look to the economic reality, and not the location, of employment to determine who employs an employee"). Plaintiff has not had an opportunity to discovery facts concerning this either.

"Establishment" has two elements of its own. First, an establishment must be a place where sales of products or services are made to members of the general public, *see A.H. Phillips*, 324 U.S. at 496; *Wirtz v. Keystone Readers Serv., Inc.*, 418 F.2d 249, 255 (5th Cir. 1969); 29 C.F.R. § 779.318 ("[A] retail or service establishment is one which sells goods or services to the general public.")[24] and second, an establishment must be open to the general public. *See* 29 C.F.R. § 779.319; *Keystone Readers*, 418 F.2d at 256-58.

Additionally, there is a question of whether the establishment employing plaintiffs is "retail." There are myriad factors to be considered when a service business is "retail." 29 U.S.C. §213(a)(2); 29 C.F.R. §§ 779.316, 779.317, 779.322, 779.331-34, 779.411; *See Idaho Sheet Metal Works v. Wirtz,* 383 U.S. 190, 204 (1996) listing many such criteria.

In this case, plaintiff requested documents regarding the Retail or Service Establishment that employed each plaintiff, and whether any sales are made to the public by the claimed

---

[24] *See* 29 C.F.R. § 779.319; *Morales v. Sr. Officers' Open Mess*, No. 344-72, 1974 WL 1337, at *2 (D.P.R. Nov. 11, 1974) (finding a private club is not "open to the public" and therefore not a retail establishment). DTSW is not open to the general public and does not make any appreciable sales to the general public. *Stephan Decl.* Rather, DTSW sells its services to DTV, who, upon information and belief, pays DTSW for the service DTSW supplies to DTV. *2007 Home Services Provider Agreement, Ex. A.*

establishment, or whether it is "open to the general public.[25] Defendant did not comply. In it March 17, 2009 response to document requests, defendant merely objected.[26]

Defendant stated that it is producing, and/or has produced, documents responsive to each of these requests. *See* Exh. G,¶¶ 1-17; 19, 21-24, 31, 32, 34. However, even seventeen days after documents were due pursuant to this Court's Order, defendant has not yet produced the documents it was ordered to provide.

---

[25] Plaintiff requested documents regarding the identity of the Retail or Service Establishment that employed each plaintiff, Exh. E, ¶ 1; the goods and services that such establishment and defendant sells, Exh. E, ¶ 2 ; locations of all the Retail or Service Establishment and defendant's offices and its organization structure, revenues, market strategy and materials, advertising, the public's access to such offices, Exh. E, ¶¶ 8-16, the location where each employee of the retail establishment worked, Exh. E, ¶ 10; storage facilities or warehouses of the Retail or Service Establishment that employs each Plaintiff, Exh. E, ¶¶ 17-18; documents concerning markets that the Retail or Service Establishment and defendant serves, Exh. E, ¶ 7; professional associations of which the Retail or Service Establishment or defendant is a member, Exh. E, ¶ 19; electronic documents on defendant's website concerning a Retail or Service Establishment, Exh. E, ¶ 20; documents concerning the involvement of DirecTV and DirecTech in technician pay, overtime, job duties, employment, or supervision, Exh. E, ¶¶ 21 -22; documents concerning the seeding of other HSPs within the areas served by defendant, Exh. E, ¶ 23, and documents concerning the closing of warehouses, distribution centers or office of defendant which was served by any union, Exh. E, ¶ 24; documents concerning contracts between defendant and DirecTV, Exh. E, ¶¶ 37, 38; documents concerning defendant's incorporation, its parent and subsidiary companies, and its relation to DirectTV, Exh. A, ¶¶ 3, 12.

[26] Defendant's main objection was that the request was "overbroad, unduly burdensome, vague," and "not reasonably calculated to lead to the discovery of admissible evidence" or that "not all the broad categories of documents will lead to admissible evidence." Exh. G, ¶¶ 1-20. Defendant further responded to requests in Exh. G, ¶¶ 14-15 by stating: "Defendant further states that a Director of Marketing/Sales has the responsibility for advertising and marketing of the DirecTech entities on a national level." Defendant responded to Exh. G, ¶ 17 by further stating that "Defendant stipulates that DirecTV provides more than 75% of Defendant's revenues and therefore this request is not relevant." In response to Exh. G, ¶ 18, Defendant did not offer to produce documents but rather referred to its currently unavailable website. In response to Exh. G, ¶ 19, Defendant also stated that Defendant is a member of the Satellite Broadcast Communications Association.

Defendant also stated that responsive information is publicly available at www.directech,com. *See* Exh. G,¶¶ 1, 2, 7, 8, 11-15,17, 18, 20. However, defendant's website directech.com, in not publicly available. Upon attempting to view the website on March 27, 2009, plaintiff's attorneys were rerouted to the website multiband.com, which does not provide any information responsive to the requests.

Another key question to determining "retail" is where the establishment's revenues come from. *Idaho Sheet Metal Works,* 383 U.S. at 204. Plaintiffs have served discovery to identify where the establishments' revenues come from but have not received any information in response. Defendant's most recent discovery response provides what appears to be a minimal revenue register, but every single piece of data is redacted. Ex. L

In this case, it appears that DTSW contracts exclusively with DirecTV to perform installations, not with the general public. DTSW's revenues are thus believed to come completely from DTV, not from the public. The sales DTSW makes to DirecTV are thus *not* retail sales. An establishment is not "retail" simply because revenues "derived" from a retail customer are passed back to suppliers and wholesalers. Where a company contracts with a single commercial entity to provide installation services, the sales are not retail. *Idaho Sheet Metal Works, Inc.*, 383 U.S. at 204 ("the term retail becomes less apt as the quantity and the price discount increase in a particular transaction"); 29 C.F.R. §779.328(b), (c). Again, there has been no full discovery on these items.

Defendant flouts discovery designed to explore the fact that virtually all of DTSW's revenues come from a single source – DirecTV. DTSW sells its installation services to DirecTV. DirecTV then sells the service to its customer. This appears to be classic "sale for resale." 29 C.F.R. §779.334 ("A sale of services where the seller knows or has reasonable cause to believe will

be resold is a sale for resale.") It would appear therefore that because more than 25% of DTSW's sales are for retail, it cannot be a retail or service establishment. Plaintiffs have requested discovery on this topic but defendant has not answered.[27] Defendant has thwarted discovery designed to prove DTSW's 207(i) exemption claim is frivolous.

      The second requirement to claim the exemption is that employees are paid 1.5 times the minimum wage for each hour worked. Plaintiff requested documents on this topic.[28] Yet Defendant has refused to provide the information showing the true hours that plaintiffs worked. Therefore an analysis of hourly rates paid is impossible. Plaintiffs expect to prove the full hours plaintiffs actually worked by computer entries in the defendant's various technician tracking and call center databases. *See Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1257 (11th Cir 2001) (factual inquiries regarding whether the regular rate of pay was greater than one and one half times the minimum wage precluded the legal determination of 207(i).) However, plaintiffs have not had discovery of this evidence. Defendant has not provided full discovery for the plaintiffs, and has refused to supply the ESI discovery that will help show the amount of time plaintiffs spent on these various tasks that defendant wrongly considers non-work time.

---

[27] Plaintiffs requests documents concerning whether at least 75% of the sales of goods or services made by the Retail or Service Establishment are "recognized as retail in the industry," Exh. E, ¶ 3**;** documents concerning whether less than 25% of the Retail or Service Establishment's sales are for resale, Exh. E, ¶ 4.

[28]Specifically plaintiff requested information concerning hours, remuneration, bonuses, commissions, pay deductions, expense reimbursements, employee benefits, job duties, job performance, Exh. A, ¶¶ 1-2; documents concerning pay rates for plaintiff's work; Exh. A, ¶¶ 8, 14 ; work related communications, records and logs which show plaintiff's job hours and work at home, Exh. A, ¶¶ 9-11, 13, 15 -21 and documents regarding deductions, reimbursement, and overtime hours, Exh. A, ¶¶ 22- 26; documents concerning the involvement or participation of DirecTV, Inc. and DirecTech in technician pay, overtime, job duties, employment, or supervision, Exh. E, ¶¶ 21 -22.

The third requirement under 207(i) is that employees must be paid at least 50% by commission. Defendant's claim that plaintiffs' job rate pay is really a commission has also not been tested by discovery. Defendant pays plaintiffs a "job rate" or "piece rate," and not by commission. Job rates occur "[i]f the employee is paid a flat sum … for doing a particular job, without regard to the number of hours worked in the day or at the job, …" 29 C.F.R. § 778.112 (2009).

Commissions are different from job rate payments and, at a minimum, require that there be a direct correlation between the amount paid to an employee and an amount charged to a customer for labor performed on his or her behalf. *See Klinedinst,* 260 F.3d at 1256; *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F. 2d 1173, 1177. (7th Cir. 1987); *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700 at *14 (M.D. Tenn. Sept 26, 2003), *affirmed* 2006 WL 2821700; *Huntley v. Bonner's Inc.*, 2003 WL 24133000 *2 (W.D. Wash. Aug 14, 2003).

In this case, data concerning the relationship between plaintiffs' pay and the amount charged to customers has been withheld from plaintiffs. Plaintiff also requested documents concerning whether more than half of plaintiffs' compensation for a representative period (not less than one month) represents commissions on goods or services,[29] and documents concerning any documentation, study, survey, or evaluation of the amount of time technicians spend on their work

---

[29] *See* Exh. E, ¶ 6. In its response, Exh. G, ¶ 6, defendant stated that the request is "overbroad, unduly burdensome, vague,"and that "not all the broad categories of documents will lead to discovery of admissible evidence." However, Defendant stated that it is producing and has produced documents responsive to this request. No such documents have since been produced or were previously fully produced or produced in their proper ESI format. The HSP contract that defendant provided in December of 2008 has redactions of all information that might be helpful to ascertain an approximate percentage of commissions paid to plaintiffs.

tasks.[30] Again, non were provided. Defendant has supplied no discovery concerning the relationship, if any, between what a DTV customer is charged for technicians' work and what a plaintiff is paid. Defendant has not supplied discovery concerning any relationship between job rates and the amount of revenue paid by a residential customer to DirecTV or by DirecTV to DTSW. Defendant has utterly thwarted any discovery into its exemptions.

>    **2.    Defendant has not produced requested documents relevant to the SAFETEA-LU TCA exemptions.**

Defendant has claimed the affirmative defense of the Motor Carrier Act exemption, relying on the argument that the SAFETEA-LU Technical Corrections Act effectively reinstated the Motor Carrier Act law predating SAFETEA-LU. Yet defendant argues that this confers an exemption from liability for its operations based merely on the review conducted by other Courts involving other companies' technicians. *See Def. SJ Brf. P. 3.*[31] Defendant relies largely on the declaration

---

[30] *See* Exh. E, ¶ 36.

[31] As *Musarra v. Digital Dish, Inc.,* 454 F.S.upp.2d 692 (S.D.Oh. 2006) made clear, the question of whether technicians are exempt under the former requirements of the Motor Carrier Act, before SAFETEA-LU, depend on considering a variety of factors to determine whether the "fixed and persisting" intent of a shipper is that goods continue in interstate commerce when moving goods on a wholly intrastate leg of their journey, and by extension, whether the intrastate journey may be considered interstate in character. *See MC-207*. "The Court recognizes that no particular factor is, in and of itself, determinative and notes that the Court's analysis should be based upon the practical realities of the transportation at issue." 454 F.Supp.2d at 711 In *Musarra*, the court found that the MCA Exemption applied to the claims of Digital Dish's satellite dish technicians who possessed an exclusive license to deliver and install DISH Network equipment in customers' homes. *Id*. at 694. The *Musarra* court considered the following factors when deciding whether the technician's intrastate transportation equated to a leg of an interstate journey: (1) whether the amount of product shipped is based on the shipper's projections of customer demand; (2) whether the shipper processes or substantially modifies the product at the warehouse; (3) whether the product is subject to the shipper's control and direction as to subsequent transportation; (4) whether the shipper can track most of the shipments coming in and going out of the warehouse; (5) whether the shipper pays for transportation charges (even if the warehouse directly pays the carrier); (6) whether the shipper owns the warehouse; and (7) whether the product is subject to a storage in transit tariff provision. *Id*. at 708-09. The *Musarra*

testimony of its supervisors to support its summary judgment motion. However, defendant has supplied no discovery on the goods moving in interstate transportation and no discovery on its knowledge of SAFETEA-LU during the one year safe-harbor provision (TCA §306).

Plaintiffs demanded documents related to the defense in our first and second requests to produce. In its second request to produce, plaintiffs requested documents concerning defendant's knowledge of the Motor Carrier Act exemption and SAFETEA-LU; defendant's lobbying activities concerning the repeal or amendment of SAFETEA-LU; documents concerning whether the Motor Carrier Act does or does not exempt any plaintiffs in this case after June 10, 2008, or after August 10, 2006 or after August 10, 2005, which are key dates under the TCA.[32] Defendant responded to most demands in the Second request[33] with the statement that it "is producing and will produce documents responsive to this request." It never did so, however. In response to the request concerning "all documents concerning whether the Motor Carrier Act does or does not exempt any plaintiffs in this case" after August 10, 2006 and after June 10, 2008 defendant responds that "no responsive information has been located."

Defendant's responses to interrogatories regarding the SAFETEA-LU TCA exemption were similarly opaque. In its second set of interrogatories, where plaintiff narrowly tailored its questions

---

court "recognized that no particular factor is, in and of itself, determinative and notes that the Court's analysis should be based upon the practical realities of the transportation at issue." *Id.* at 711.

[32] See Exh. E, ¶¶ 25-26, 27, 33-35. Exh. E, ¶¶ 28-32 are not discussed here because defendants have stated that they have no such documents and that plaintiffs did not drive vehicles that met the criteria pertaining to these questions.

[33] See Exh. G, ¶21, 22, 23, 31 ("All documents concerning whether the MCA does or does not exempt any plaintiffs"), 32 with the same promise to comply later.

to this subject in an effort to elicit reasonable responses, defendant refused to provide any.[34]

Defendant has raised the SAFETEA-LU TCA exemption as an affirmative defense, but failed to produce any documents or otherwise show what it has relied on to form a basis for such a claim. Defendant has simply disregarded the discovery process, and indeed, this Court's Order of March 3, 2009.

**CONCLUSION**

Defendant has woefully failed in its obligations to provide plaintiffs with discovery ordered by this Court. It has impeded plaintiff's ability to conduct sequential discovery on a very quick deadline set by this Court. It has flagrantly violated this Court's Order. Defendant should be sanctioned and/or held in contempt for failing to produce documents this Court Ordered. This Court should strike defendant's affirmative defenses under the Motor Carrier Act and 29 U.S.C. §207(i), compel compliance with discovery, and award plaintiffs costs and fees on this motion.

Dated:  April 3, 2009


Respectfully Submitted,

 /s/ Dan Getman


| | | |
|---|---|---|
| Dan Getman (pro hac vice) | Philip Bohrer (#14089) | Kip K. Lamb |
| GETMAN LAW OFFICE | BOHRER LAW FIRM, L.L.C. | K. Leigh Parker |
| Dan Getman (pro hac vice) | 8712 Jefferson Hwy., Suite B | Mark W. Frasher |
| Carol Richman (on the brief) | Baton Rouge, Louisiana 70809 | LAMB LAW FIRM |
| 9 Paradies Lane | Telephone: 225/925-5297 | 550 Fannin, Suite 1330 |
| New Paltz, NY 12561 | | Beaumont, Texas 77701 |
| Telephone: 845/255-9370 | | |

---

[34] See Exh. H, ¶¶ 1-3.

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing has this day been served through the ecf system to all counsel of record in these proceedings, this April 3, 2009 and (if applicable) by first class mail to all attorneys or unrepresented parties not registered in the ecf system for this case.

      /s Dan Getman  
      Dan Getman (pro hac vice)